**FILED**

OCT 1 2 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JURY ACTION

|  |  |
|---|---|
| MARY C. BURLEY<br>for herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AT&T CORP. and<br>AT&T COMMUNICATIONS – EAST, INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case: 1:07-cv-01845
Assigned To : Friedman, Paul L.
Assign. Date : 10/12/2007
Description: General Civil

**Class Action**

**Jury Trial Demanded**

## CLASS ACTION COMPLAINT

Plaintiff Mary C. Burley (the "Named Plaintiff") and all others similarly situated, for their cause of action against the Defendants state as follows:

### Jurisdiction

1.     This Court has jurisdiction over the causes of action in this case under 28 U.S.C. §1332.  There is complete diversity of citizenship among the parties and the amount in controversy, exclusive of interest and costs, exceeds Seventy-Five Thousand Dollars ($75,000.00).

### Parties and Class Action Allegations

2.     Mary C. Burley is a citizen of the District of Columbia, resides in the District of Columbia and owns property in the District of Columbia through which AT&T has installed and is operating fiber optic or other telecommunications cable.

1

3.      Defendant AT&T Corp. is a New York corporation authorized to do business in the District of Columbia.    Defendant AT&T Communications – East, Inc. is a Delaware corporation authorized to do business in the District of Columbia.    AT&T Corp. and AT&T Communications – East, Inc. and their affiliates will hereinafter be referred to collectively as "AT&T."  AT&T by itself or through its subsidiaries, affiliates, joint venture partners, agents or otherwise owns and operates telecommunications equipment and provides telecommunications and related services throughout the United States, including fiber optic and other telecommunications cable in at least forty-two states and the District of Columbia and is legally responsible for the acts of its subsidiaries, affiliates, joint venture partners and agents that are described in this Complaint.

4.      This action is brought by the Named Plaintiff as a class action, on her own behalf and on behalf of all others similarly situated, under the provisions of Rule 23 of the Federal Rules of Civil Procedure.

5.      The Named Plaintiff represents a class (hereinafter "the Class") consisting of all owners of land in the District of Columbia that is or was subject to an easement for a limited purpose held by a railroad or pipeline or other utility company on which AT&T has entered to install or maintain a fiber optic or other telecommunications cable without obtaining the consent of the owner of the land.

6.      The Named Plaintiff may bring this action as the representative of the Class because:

(a)      As an owner of such land as is described above, she is entitled to compensation for the use and occupation by AT&T of her land, the revenues wrongfully made

2

by AT&T from AT&T's use and occupation of her land, common damages and declaratory and injunctive relief;

(b)    Her claims are typical of the claims of the other members of the Class;

(c)    The Named Plaintiff will fairly and adequately represent the interests of the Class; the Named Plaintiff has no interest adverse to the interests of the Class; and counsel selected by the Named Plaintiff is experienced in handling class actions and other complex commercial and consumer litigation and will fairly and adequately represent the interests of all members of the Class;

(d)    AT&T installed miles of fiber optic and other telecommunications cable in the District of Columbia in land that is or once was subject to a right-of-way easement, license or occupancy for railroad purposes ("railroad right-of-way land") or to a pipeline or utility right-of-way, easement or occupancy ("utility right-of-way land") (collectively, "right-of-way land") whether in operating, discontinued, or abandoned railroad right-of-way land or in operating or abandoned utility right-of-way land. The Class members include current owners of the right-of-way land and persons or entities that formerly owned the right-of-way land during time periods relevant to the claims alleged herein. Therefore, although the exact number of members of the Class is presently unknown, it is estimated that there are not less than one hundred members and the Class is so numerous that joinder of individual members in this action is impracticable.

7.     Common questions of fact predominate over questions of fact affecting only individual members of the Class. Such common questions include:

(a)     Whether AT&T adopted policies, procedures and a pattern of practice to install and operate fiber optic or other telecommunications cable through the right-of-way land without seeking or obtaining the consent of the Class members;

(b)     Whether it was AT&T's policy and practice to disregard the rights of underlying landowners when negotiating for and purporting to obtain occupancy rights in the right-of-way land and when entering and occupying the right-of-way land;

(c)     Whether AT&T acted toward the Class with a reckless indifference to the rights of the Class members;

(d)     Whether AT&T intentionally entered the Class members' land or caused a thing, such as a telecommunications cable, to do so, or remained on the Class members' land or failed to remove from the Class members' land a thing, such as a telecommunications cable, which it was under a duty to remove;

(e)     Whether AT&T published false statements disparaging the Class members' property rights in land, which statements AT&T should have recognized were likely to result in pecuniary harm to the Class members;

(f)     Whether AT&T acted in heedless disregard of the consequences to the Class members when it published false statements disparaging the Class members' property rights in land that AT&T should have recognized were likely to result in pecuniary harm to the Class members;

4

(g)    Whether AT&T knew that it could not obtain occupancy rights in the right-of-way land from the railroad, pipeline or utility company that held merely a right-of-way easement, license or other limited occupancy right for railroad, pipeline or utility purposes ("right-of-way user") or whether AT&T acted with reckless disregard of whether it could obtain occupancy rights in the right-of-way land from the right-of-way users;

(h)    Whether AT&T asserted any ownership interest or occupancy rights in the right-of-way land and whether AT&T knew that such assertions were false at the time those assertions were made, or whether such assertions were made recklessly and without adequate investigation of their truth;

(i)    Whether AT&T negotiated for or entered into contracts that purported to transfer occupancy rights or ownership interests in entire corridors of railroad right-of-way land and corridors of utility right-of-way land and whether AT&T knew or should have known that such purported transfers were wholly ineffective because the granting party had no legal interest in the right-of-way land that it could transfer to AT&T for fiber optic or other telecommunications cable purposes;

(j)    Whether AT&T obtained revenues from its use and occupancy of the right-of-way land;

(k)    Whether AT&T exercised dominion and control over the right-of-way land or attempted to restrict access to the right-of-way land;

(l)    Whether AT&T adopted a common nationwide course of conduct of threats and intimidation, including threats of civil liability, money damages, and criminal prosecution of persons who interfere with AT&T's fiber optic or telecommunications cables in land belonging to members of the Class;

(m)    Whether AT&T maintains signs in visible locations along the right-of-way land where its cable is located and whether AT&T did not obtain permission from the underlying landowner when placing the signs on the landowner's property;

(n)    Whether AT&T's signs carry a substantially uniform message that threatens everyone, including the underlying landowners, with prosecution if they disturb AT&T's buried cables; and

(o)    Whether AT&T sends out mailings to addresses near the right-of-way land to anyone who may be within sight of the cable to make the general public aware of the presence of AT&T's cable and AT&T's claim of right to maintain the cable on the Class members' land.

8.    Pursuant to Fed. R. Civ. Pro. 23(b)(3), common questions of law predominate over questions of law affecting individual members of the Class. Such common questions include:

(a)    Whether AT&T's conduct common to the Class demonstrated reckless indifference to the rights of others and thus whether the Class members are entitled to punitive damages based on the conduct of AT&T;

6

(b)    Whether AT&T engaged in trespass by: intentionally entering upon the Class members' land; causing a thing, such as a telecommunications cable, to do so; remaining on the Class members' land; or failing to remove from the Class members' land a thing, such as a telecommunications cable;

(c)    Whether AT&T's publishing of the same, or substantially the same false statements disparaging the Class members' property rights in land, which statements AT&T should have recognized were likely to result in pecuniary harm, constitutes slander of the Class members' title to the land;

(d)    Whether AT&T's conduct common to the Class resulted in AT&T's being enriched at the expense of the Class members, or in AT&T's retaining a benefit to the loss of the Class members against the fundamental principles of justice or equity and good conscience, and thus constitutes unjust enrichment;

(e)    Whether AT&T can obtain from a railroad company, pipeline company or utility company any subsurface or other rights in land for the installation and operation of a fiber optic or other telecommunications cable where the railroad company, pipeline company or utility company holds or held only an easement, license or other limited occupancy right for railroad, pipeline or other limited purpose;

(f)    Whether contracts purporting to have an effect on Class members' land entered into secretly between AT&T on one hand and railroad companies, pipeline companies or utility companies on the other hand amount to or involve fraudulent concealment of torts committed against members of the Class.

9.    Pursuant to Fed. R. Civ. Pro. 23(b)(1), the prosecution of separate actions by individual members of the Class would create risk of: (a) inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for AT&T, or (b) adjudications with respect to individual members of the Class which would as a practical matter be dispositive of the interest of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

10.    Pursuant to Fed. R. Civ. Pro. 23(b)(2), AT&T has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as whole.

11.    A class action is a superior method of adjudicating the rights of the parties; and this action would be manageable as a class action.

12.    The resolution of the common questions of law and fact will aid in the resolution of individual questions of law and fact, and questions of law and fact particular to the class and any other appropriate subclass or subclasses.

## Facts Applicable to All Counts

13.    In the early 1980s, AT&T began an aggressive campaign to build a nationwide network of fiber optic cable.  AT&T's management moved with a sense of urgency to build and put in service a nationwide fiber optic cable network, proposing the implementation of thousands of miles of fiber optic cable in a fraction of the time previously required to implement a cable network.

14.     The drastically shortened time schedule from the date of decision to the deadline for active service on a new cable line did not allow time for AT&T to acquire rights in land in the same manner that it did in the past.  AT&T deliberately adopted a plan that did not allow time for and did not contemplate AT&T's real estate professionals and contractors negotiating individually with landowners to acquire easements or other rights through their land.

15.     AT&T  installed  and  is  operating  a  network  of  fiber  optic  or  other telecommunications cable through land that belongs to the members of the Class.  AT&T claims to have 40,000 miles of fiber optic cable in the continental United States.

16.     The land through which AT&T has installed and is operating telecommunications cable includes land that is or was subject to:

(a)     an easement, license or other occupancy for railroad purposes ("railroad right-of-way");

(b)     an easement, license or other occupancy for a pipeline or utility purpose ("utility right-of-way");

17.     Railroad rights of way were limited, at the time of acquisition and today, as follows:

(a)     the railroad rights of way are limited to railroad purposes;

(b)     the railroad rights of way are extinguished whenever the land ceases to be used for railroad purposes, and the unencumbered title to the railroad right-of-way land reverts to the underlying landowners as a matter of law.

18.    Because the railroad rights of way are limited to railroad purposes, the railroad companies that held or hold the railroad rights of way have never held, and cannot lease, license, convey or otherwise transfer or create any rights in, under, over or across railroad right-of-way land for purposes other than railroad purposes.

19.    Because the railroad rights of way are extinguished as a matter of law whenever the land ceases to be used for railroad purposes, the abandonment of the railroad rights of way ends both the railroad companies' interest in the railroad right-of-way land and any right or interest in the land purportedly granted by or otherwise derived from the railroad companies even if otherwise lawful. Thus, when the land owned by the Named Plaintiff and the other members of the Class ceases to be used for railroad purposes, it is freed from any claims of the railroad companies or their purported transferees, including AT&T, to any interest in the railroad right-of-way land.

20.    Utility rights of way were limited at the time of acquisition and today to the purposes for which they were originally granted and are extinguished whenever the land ceases to be used for those purposes.

21.    AT&T knew that the railroad companies and the pipeline or utility companies that held merely a right-of-way easement for limited purposes could not grant AT&T the right to install, maintain or operate fiber optic or telecommunications cable, or AT&T acted with reckless disregard as to whether the right-of-way user could grant AT&T the right to install, maintain or operate fiber optic or telecommunications cable in the right-of-way land.

22.    AT&T knew that legal problems would arise from the use of railroad right-of-way land where AT&T's purported occupancy rights were based on the limited rights acquired by the

railroad for its rail line. AT&T knew that AT&T's occupancy rights derived from the railroads were far from sound.

23.     AT&T knew that the fact that a permit is not required from the railroad for crossing a railroad easement does not eliminate the necessity of obtaining the permission of the owner of the underlying fee title and that if there was a reversion to adjacent property owners or could be such in the future, it is necessary to obtain an easement from the adjacent property owners.

24.     AT&T also knew that if a deed conveying railroad right-of-way interests contains the words "right of way" or words of similar meaning, it conveys only an easement – not fee title.

25.     Despite this knowledge, AT&T prioritized use of railroad and utility right-of-way land in order to avoid the cost and time of acquiring new private right-of-way land or rights.

26.     AT&T entered into agreements with railroad, pipeline or utility companies purporting to obtain the right to occupy land belonging to members of the Class.

27.     Upon information and belief, AT&T has entered into agreements with railroad companies and pipeline and utility companies which purport to grant to AT&T the right to install and operate fiber optic or other telecommunications cables in railroad right-of-way land or utility right-of-way land.

28.     AT&T has not obtained a valid easement, license or legal occupancy permitting AT&T to install or operate fiber optic or other telecommunications cable through the land of the

members of the Class, nor has it obtained any other valid interest or right in the land of the members of the Class, whether pursuant to the aforesaid Agreements or otherwise.

29.     AT&T's practice and policy, once it entered into an agreement with a railroad was to not inform the underlying landowners that AT&T was entering the right-of-way land and installing and maintaining fiber optic and other telecommunications cable and to not obtain the consent of the underlying landowner. AT&T, as a matter of policy and practice, did not even attempt to determine who owned the underlying land.

30.     AT&T has adopted a common nationwide course of conduct of threats and intimidation, including threats of civil liability, money damages, and criminal prosecution of persons who interfere with AT&T's fiber optic or telecommunications cables in land belonging to members of the Class.

31.     AT&T maintains signs in visible locations along the right-of-way land where its cable is located. AT&T did not obtain permission from the underlying landowner when placing the signs on the landowner's property.

32.     AT&T's signs carry a substantially uniform message that threatens everyone, including the underlying landowners, with prosecution if they disturb AT&T's buried cables.

33.     AT&T sends out mailings to addresses near the right-of-way land to anyone who may be within sight of the cable to make the general public aware of the presence of AT&T's cable and AT&T's claim of right to maintain the cable on Class members' land.

34.     AT&T knew or should have known that it had neither legal right nor color of title in the land of the Named Plaintiff and the other members of the Class.

35.    AT&T entered upon the land of the Named Plaintiff and the other members of the Class and installed, maintained and operated fiber optic and other telecommunications cables through the land, without the consent or permission of the Named Plaintiff and the other members of the Class, and without having paid or offered sufficient or any compensation to the Named Plaintiff and the other members of the Class, and without having instituted eminent domain proceedings to obtain any legal rights to the land or to assess such compensation.

36.    Upon information and belief, AT&T has reaped substantial revenues, believed to be millions of dollars per year, from its occupation and use of the land of the Named Plaintiff and the other members of the Class, which unlawfully gained revenues rightfully should be disgorged to the Named Plaintiff and the other members of the Class.

## COUNT I
### (To Recover Damages For Trespass)

37.    The Named Plaintiff incorporates by reference paragraphs 1 through 36 of this Complaint.

38.    AT&T's actions in entering upon the land of the Named Plaintiff and the other members of the Class and installing, maintaining or otherwise managing its fiber optic or other telecommunications cable without right constitute a trespass.

39.    AT&T trespassed on the Class members' land for AT&T's commercial purpose of creating, operating and gaining revenue from a nationwide network of fiber optic and telecommunications cable.

40.    AT&T received substantial revenues from its commercial occupation and use of the Named Plaintiff's and the other Class members' land, which revenues have not been paid to the Class members.

41.    The Named Plaintiff and the other members of the Class are entitled to damages resulting from AT&T's trespass, including common damages for trespass such as the reasonable value of the use of the land for AT&T's commercial purposes, or, at Plaintiff's election, all revenues arising from AT&T's trespass.

42.    The Named Plaintiff and other members of the Class may establish that they are entitled to additional damages resulting from AT&T's trespass on their land, including damages for injury to the land, damages for diminution of any special value of the land, including diminution of the value of the residual estate through which AT&T placed and maintained its cables, and damages for the deprivation of the full use and enjoyment of their land.  Such claims may be tried in this action or in subclass proceedings within this action, or they may be tried in independent actions if the Court determines after the resolution of the class-wide claims that the class action should be decertified for proof of such special claims.

43.    AT&T's actions have been oppressive, malicious, willful, wanton and in heedless disregard of the consequences to the Named Plaintiff and the other members of the Class. Society's interest would be furthered by an award of punitive damages.  Such damages are necessary to punish AT&T and to deter such conduct in the future.

WHEREFORE, the Named Plaintiff and the other members of the Class pray: (1) for an award for common damages for trespass; (2) for damages in the amount of the reasonable value of the use of the land for AT&T's commercial purposes, or, at Plaintiff's election, all revenues

14

arising from AT&T's trespass; (3) that AT&T be directed to render a just and full accounting of all sums received by AT&T as a result of its trespass; (4) for punitive damages; (5) for special damages for trespass including damages for injury to the land and damages for diminution of any special value of the land, including diminution of the value of the residual estate through which AT&T placed and maintained its cables; and, (6) for all other just and proper relief.

## COUNT II
### (To Recover Profits From Unjust Enrichment)

44.    The Named Plaintiff incorporates by reference paragraphs 1 through 43 of this Complaint.

45.    As a result of AT&T's unlawful use and occupation of their land, the Named Plaintiff and the other members of the Class have been deprived of the rents and profits and other benefits arising from AT&T's commercial use and occupation of their land, and AT&T has been unjustly enriched by its wrongful receipt and retention thereof.

46.    The Named Plaintiff and the other members of the Class are entitled to damages in the amount equal to the benefit that accrued to AT&T when it was unjustly enriched by its unlawful use and occupancy of Named Plaintiff's and the other Class members' land.

WHEREFORE, the Named Plaintiff and the other members of the Class pray: (1) that AT&T be directed to render a just and full accounting of all sums so received by AT&T; (2) for a determination that the doctrine of unjust enrichment requires AT&T to pay to the members of the Class all sums so received by AT&T; (3) that the Named Plaintiff and the other Class members be awarded damages and all other just and proper relief.

## COUNT III

### (To Recover Damages For Slander of Title)

47.     The Named Plaintiff incorporates by reference paragraphs 1 through 46 of this Complaint.

48.     AT&T filed or caused to be filed in governmental offices public papers which assert a claim of right to occupy land belonging to Named Plaintiff and the other members of the Class.

49.     AT&T has posted signs in visible locations on land throughout the United States, including land belonging to members of the Class, asserting that AT&T has placed fiber optic or telecommunications lines on such land, asserting a right to the use and occupancy of such land, and threatening criminal prosecution in retaliation for any interference with AT&T's use or occupancy of the land.

50.     AT&T has adopted a common course of conduct of threats and intimidation, including threats of civil liability, money damages, and criminal prosecution of persons who interfere with AT&T's fiber optic or telecommunications cables in land belonging to members of the Class.

51.     By the aforesaid acts, other assertions of purported rights of use and occupancy in the land belonging to the Named Plaintiff and the other members of the Class, and other threats and coercion, AT&T has engaged in a common course of conduct whereby it has knowingly and maliciously slandered the title of the Class members' land.

52.    As a direct and proximate result of AT&T's conduct, the Named Plaintiff and the other members of the Class are entitled to damages resulting from AT&T's slander of their title, including common damages for slander of title such as the reasonable costs to obtain a declaration of law that AT&T has no legal interest in their land and damages for the reasonable value of the use of the land.

53.    The Named Plaintiff and other members of the Class may establish that they have incurred special damages in that they have suffered inchoate injury to the value of their land, including diminution of the value of the residual estate in which AT&T asserted an interest, as a result of the slander and that they have been deprived of the full use and enjoyment of their land.

54.    AT&T's conduct has been oppressive, malicious, willful, wanton and in heedless disregard of the consequences to the Named Plaintiff and the other members of the Class. AT&T knew or should have known that it did not possess any legal ownership or occupancy interest in the right-of-way land or it recklessly asserted that it did have such an interest without adequate investigation.  Society's interest would be furthered by an award of punitive damages. Such damages are necessary to punish AT&T and to deter such conduct in the future.

WHEREFORE, the Named Plaintiff and the other members of the Class pray for: (1) an award of common damages sufficient to compensate them for their pecuniary losses, including reasonable costs necessary to obtain a declaration of law that AT&T has no legal interest in their land and the reasonable value of the use of the land; (2) punitive damages; (3) an award of special damages, including damages for the injury to the value of their land, including diminution of the value of the residual estate caused by AT&T's claim of occupancy rights in

17

their land and deprivation of the full use and enjoyment of their land; and (4) all other just and proper relief.

## COUNT IV
### (Declaratory and Injunctive Relief)

55.    The Named Plaintiff incorporates by reference paragraphs 1 through 54 of this Complaint.

56.    A genuine dispute exists between AT&T and the members of the Class as to whether AT&T has the legal right to exercise dominion and control over the right-of-way land or any other interest in the right-of-way land.

57.    Without obtaining permission from or making compensation to the Named Plaintiff and members of the Class, AT&T has installed and is operating a telecommunications system on the right-of-way land adjoining their property.  This activity constitutes an unlawful trespass where the railroad, pipeline or utility company from whom AT&T obtained permission to install its system did not have title in fee simple absolute to the right-of-way land.  Thus the Named Plaintiff and other members of the Class face an immediate threat of irreparable harm to their real property interests.

58.    The Named Plaintiff and other members of the Class have no adequate legal remedy to protect their real property interests, which are threatened by AT&T's actions.

WHEREFORE, the Named Plaintiff, on behalf of the other Class members and herself, prays for a declaratory judgment of law that: (1) AT&T did not obtain any title or interest or right to occupy or use the right-of-way land from agreements made with railroad companies or pipeline or utility companies; (2) the agreements between AT&T and railroad companies or

pipeline or utility companies create no lawful encumbrance on the right-of-way land; (3) AT&T has no valid easement, license or other right of occupancy in the right-of-way land; and, (4) AT&T has no right to exercise dominion and control over the right-of-way land if the source of AT&T's claim of right to exercise dominion and control over the right-of-way land is something other than permission of the Class member or a judicial decree or decision of condemnation by a court of competent jurisdiction. The Named Plaintiff, on behalf of the other Class members and themselves, also prays that AT&T be permanently enjoined from continuing to utilize the right-of-way land owned by the Named Plaintiff and other Class members without their consent, and from operating and maintaining any part of its telecommunications system on this land.

The Named Plaintiff further prays for costs and expenses incurred in obtaining this declaration of law and permanent injunction and for all other just and proper relief.

### Jury Demand

The Named Plaintiff demands a trial by jury for all issues triable of right by jury.

Roger C. Johnson (D.C. Bar No. 940577)
Andrew W. Cohen (D.C. Bar No. 441149)
KOONZ, MCKENNEY, JOHNSON,
DEPAOLIS & LIGHTFOOT, L.L.P.
2001 Pennsylvania Ave., N.W., Suite 450
Washington, D.C. 20006
Telephone: (202) 659-5500
Facsimile: (202) 785-3719

– and –

Nels J. Ackerson
**ACKERSON, KAUFFMAN, FEX, P.C.**
1250 H Street, NW, Suite 850
Washington, D.C. 20004
Telephone: (202) 833-8833
Facsimile: (202) 833-8831

Daniel J. Millea
**ZELLE, HOFMANN, VOELBEL, MASON & GETTE, LLP**
500 Washington Avenue South, Suite 4000
Minneapolis, MN 55415
Telephone: (612) 339-2020
Facsimile: (612) 336-9100

Henry J. Price
**PRICE, WAICUKAUSKI & RILEY, LLC**
The Hammond Block Building
301 Massachusetts Avenue
Indianapolis, IN 46204
Telephone: (317) 633-8787
Facsimile: (317) 633-8797


ATTORNEYS FOR NAMED PLAINTIFF
AND ALL OTHERS SIMILARLY SITUATED

JS-44
(Rev.1/05 DC)

## CIVIL COVER SHEET

### I (a) PLAINTIFFS

Mary C. Burley, for herself and all others similarly situated

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Washington, DC
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Roger C. Johnson
Andrew W. Cohen
KOONZ, MCKENNEY, JOHNSON,
   DEPAOLIS & LIGHTFOOT, L.L.P.
2001 Pennsylvania Ave., N.W., Suite 450
Washington, DC 20006
(202) 659-5500

### DEFENDANTS

AT&T Corp. and AT&T Communications - East, Inc.

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  New York City, NY
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF

Case: 1:07-cv-01845
Assigned To : Friedman, Paul L.
Assign. Date : 10/12/2007
Description: General Civil

JURY ACTION

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ○ 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ◉ 4 Diversity (Indicate Citizenship of Parties in item III)

### III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ◉ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ◉ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

### IV. CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

○ **A. Antitrust**

- ☐ 410 Antitrust

○ **B. Personal Injury/Malpractice**

- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)
Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

◉ **E. General Civil (Other)**     OR     ○ **F. Pro Se General Civil**

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☒ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

Other Statutes
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

(2)

| **G. Habeas Corpus/ 2255** | **H. Employment Discrimination** | **I. FOIA/PRIVACY ACT** | **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| **K. Labor/ERISA (non-employment)** | **L. Other Civil Rights (non-employment)** | **M. Contract** | **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding    ○ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Trespass, unjust enrichment, slander of title, and declaratory judgment arising from installation of fiber-optic cable on plaintiff's land. *28 USC 1332*

**VII. REQUESTED IN COMPLAINT** ☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    **DEMAND $** _____ Check YES only if demanded in complaint    **JURY DEMAND:** YES ☒ NO ☐

**VIII. RELATED CASE(S) IF ANY** (See instruction) YES ☐ NO ☒ If yes, please complete related case form.

DATE October 11, 2007    SIGNATURE OF ATTORNEY OF RECORD _____

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
### Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.